UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 08-cr-00365-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL ARTHUR GRIGGS,
2. CHARLES HOMER "CHIP" SHARP,
3. JUSTIN SHANE BLACKBURN,
4. MARK R. TROUDT,
5. JASON ALAN CAIN,
6. BRETT DAVID HARDING,
7. PETER T. JENNINGS,
8. MATTHEW KASKEL,
9. GARLAND SCOTT RISDON, and
10. DANIEL JOHN TRAVERS,

    Defendants,

and

DISASTER RESTORATION, INC.,

    Intervenor.

---

**OPINION AND ORDER DENYING, IN PART, MOTION TO SUPPRESS**

---

**THIS MATTER** comes before the Court pursuant to the Defendants' and Intervenor Disaster Restoration Inc.'s (hereafter "DRI") Motion to Suppress and for Return of Property **(#148)**, the Government's response **(# 172,** as supplemented **233)**, the Defendants' reply **(# 201,** as supplemented **235, 236)**, the Government's surreply **(# 245)**, the Defendants' sur-surreply **(#56)**, Defendant Cain's reply **(# 296)**, and Defendant Harding's reply **(# 331)**.

Familiarity with the underlying allegations and charges in this case is assumed. The Court issues this Order in anticipation of an evidentiary hearing on the motion scheduled for May 28-29, 2009. Because many of the issues presented in the motion do not require an evidentiary presentation, the Court issues this Order to address certain arguments and issues with the expectation that it will permit the parties to narrow and limit their evidentiary presentations to only those matters requiring further consideration by the Court.

The instant motion raises several grounds for suppressing the fruits of a search warrant, executed on December 7, 2006 at the offices of DRI. Each of the arguments is raised by the Defendants is factually and legally distinct and will be addressed separately.

**A. Suppression based on private citizens' presence during warrant execution**

The motion alleges that the federal agents executing the warrant permitted individuals associated with the National Insurance Crime Bureau ("NICB") – a private, insurance industry-created entity with no actual law enforcement powers – to assist in the execution of the warrant, to seize computers and other property belonging to DRI, and to conduct essentially custodial interviews of witnesses in the course of executing the warrant. The Defendants argue that 18 U.S.C. § 3105 provides that only designated law enforcement officers may execute a warrant, except where a law enforcement officer requests the aid of another to assist and only where the officer is "present and acting in its execution." The Defendants contend that they and others at DRI were led to believe that the NICB representatives were, in fact, law enforcement officers and that the NICB representatives "prevented them from leaving the facility and threatened them when challenged about that proposition."

The Government denies that the NICB representatives meaningfully participated in the

execution of the warrant. According to the Government, the NICB representatives "did not search for or take custody of evidentiary items during the warrant's execution," they "did interview some of the people present on the premises while the warrant was being executed," and that they "helped load previously seized items onto a truck at the conclusion of the search," all of which was done at the request and with the consent of the law enforcement officials executing the warrant. With regard to the interviews, the Government contends that the taking of witness statements is not a component of executing a search warrant – an action intended to effect the seizure of property and persons – and thus, to the extent that permitting the NICB representatives to do so was improper, that impropriety does not affect the reasonableness of the search of DRI's offices and the seizure of evidence. Moreover, the Government contends that to the effect the NICB interviews may have violated Fourth and Fifth Amendment rights of the individuals interviewed, the Defendants are not entitled to vicariously assert those rights on behalf of the interviewees.

It is apparent that there is a significant factual dispute between the parties as to the nature and extent of the NICB representatives' involvement in the execution of the warrant. Presentation of evidence is necessary to determine the nature and extent of the representatives' involvement. The parties shall be prepared to present evidence on this issue on May 28, 2009.

### B. Request for a *Franks* hearing

The Defendants contend that the affidavit in support of the warrant contained numerous material and intentional or reckless misrepresentations of fact, entitling the Defendants to a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

The Defendants contend that the affidavit signed by Postal Inspector Cindy Horton,

3

submitted as part of the application for a search warrant, contains several misrepresentations or omissions:

• It fails to disclose that NICB is a private, industry-funded entity, not an actual law enforcement organization.

• It "does not explain the function of the NICB investigators" who provided much of the information underlying the affidavit, does not disclose the investigators' "motive or bias against DRI," and does not disclose the fact that "witnesses have reported that the statements attributed to them are false."

• It misleadingly states that "property owners hired DRI in conjunction with the owners' insurance company," when, in fact, DRI is not hired by or connected with insurance companies in any way.

• It alleges that State Farm paid Disaster Restoration "$2 million, for their costs plus 10% profit and 10% management fee" with regard to the "Vine Street Job" but that Disaster Restoration's costs were only $875,000. The Defendants contend that DRI was actually paid only $ 1.5 million with regard to this job, and that the $875,000 cost figure "is without any foundation and was likely supplied by NICB."

• It relates information conveyed to Inspector Horton by former DRI employee Greg Rye without disclosing that Rye was disgruntled towards DRI and had stolen confidential information from the company.

In *Franks*, the Supreme Court held that in limited circumstances, a defendant is entitled to an evidentiary hearing to determine whether a warrant was issued in reliance on a deliberately or recklessly false affidavit. To be entitled to a *Franks* hearing, a defendant must make a substantial showing that the warrant affiant made a false statement or omitted material information from the affidavit, and that the misrepresentation or omission was made knowingly or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-56; *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004). The burden is on the Defendants to come forward with evidence that would demonstrate the affiant's knowledge of the false information or reckless disregard of its potential for falsity. *U.S. v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). Proof of

the affiant's intent is essential, as negligent or unwitting presentation of incorrect or misleading information is not grounds for relief. *Artez*, *id.* at 1116.

This Court finds that although the Defendants' motion contains a conclusory assertion that Inspector Horton made the various misstatements and omissions "intentionally or in reckless disregard for the truth," the Defendants provide no factual allegations that would demonstrate Inspector Horton's state of mind with regard to the affidavit's contents. The Defendants' motion is supported only by the affidavit of Anthony DiVirgilio, who vigorously assails the veracity of the NICB investigators, but offers practically no allegations as to Inspector Horton's state of mind. To the extent his affidavit can be read to make some assertion as to Inspector Horton's intentions, it is clear that Mr. DiVirgilio is simply offering an inference that he himself has formed about her intent based on reading the warrant affidavit. *Docket* # 146, ¶ 5B (by using the term "investigators," "Ms. Horton is suggesting that the reports she has read, considered, and was proffering as fact were prepared by law enforcement agents when the majority of the reports were not"). Mr. DiVirgilio's personal opinion of Inspector Horton's intent is of no evidentiary significance.

Similarly, the Defendants have submitted a surreply affidavit **(# 235)** of Clinton Miller, a proffered expert on insurance law. Like Mr. DiVirgilio, Mr. Miller opines that statements in Inspector Horton's affidavit are materially misleading and "were made in reckless disregard for the truth of those statements," but he offers no facts to support his conclusion about her state of mind. Indeed, beyond making that assertion, Mr. Miller's affidavit speaks only of matters within his own knowledge; he does not purport to opine as to the extent of Inspector Horton's knowledge as to any of the matters at issue. Such conclusory assertions are insufficient to carry

5

the Defendants' burden of making a "substantial showing" of Inspector Horton's intent in order to be entitled to a hearing.  *Artez, id.* at 1116.

In its reply, the Defendants appear to assume that, because the Government has asserted that Inspector Horton's affidavit was made in good faith, the "government has put [her intent] before the Court, requir[ing] that this Court examine Horton's testimony more thoroughly in a *Franks* hearing."  *Franks* and its progeny clearly contemplate that no hearing is warranted until the defendant has carried its burden of making a "substantial showing" of the affiant's bad intent. *U.S. v. Ford*, 184 Fed.Appx. 693, 695 (10th Cir. 2006) (unpublished) ("In order to justify a *Franks* hearing, the defendant must first establish by a preponderance of the evidence that officers intentionally or with reckless disregard for the truth omitted material information from, or included false information in, the affidavit"), *citing Tisdale, supra*.  Despite having had access to 70,000 pages of discovery and the ability to consider Inspector Horton's extensive affidavit in opposition to the instant Motion, the Defendants' reply offers nothing more than rhetorical questions about Inspector Horton's state of mind when proffering the warrant affidavit.  Far from being a "substantial showing" of ill intent, the Defendants offer nothing more than speculation and a request to conduct a fishing expedition on this issue if granted a *Franks* hearing.  No hearing is warranted under these circumstances.

Moreover, the Court further finds that, even if the alleged misrepresentations were excised from the affidavit and the allegedly omitted information included, the warrant would still have issued.  *Ford, supra* at 695 (no *Franks* hearing necessary if warrant affidavit, modified to exclude false information and include omitted information, would still establish probable cause). Many of the "false statements" cited by the Defendants are largely immaterial to the question of

probable cause. A complaint about an allegation that homeowners hire DRI "in conjunction with" insurance companies or a suggestion that there is some privity between them is largely an issue of semantics and has no bearing on whether DRI's employees are engaged in the crime of mail fraud. Disputes about precise amounts at issue on the Vine Street Job are inconsequential in light of the numerous, generalized statements by witnesses that describe the scheme in question. The fact that Mr. Rye may harbor a grudge against DRI or otherwise has motive to fabricate might arguably warrant discounting his allegations, but his statements are largely corroborated by numerous witnesses that lack any alleged motive to mislead. Finally, for reasons discussed more fully below, the Court finds that a more accurate disclosure of the affiliation and possible motives of NICB investigators would be immaterial to the magistrate's consideration of the warrant application, as Inspector Horton herself personally conducted or participated in many of the witness interviews recited therein. Thus, the Court finds that no *Franks* hearing is necessary for several reasons. To the extent the Motion requests a *Franks* hearing, that request is denied.

### C. Sufficiency of application's demonstration of probable cause

Next, the Defendants contend that the warrant not validly issued because Inspector Horton's affidavit failed to adequately allege facts that would establish the veracity of her informants and demonstrate probable cause that a crime was being committed.

A search warrant can only be issued upon a showing of probable cause to believe that a crime has been committed. When allegations in a warrant application are premised upon information not personally known by the affiant, it is necessary for the issuing magistrate to consider the veracity of the information supplied by informants. Whether a warrant application

founded upon an informant's allegations of criminal conduct demonstrates sufficient probable cause is a "practical, common-sense decision," to be made by the magistrate in consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Among the factors that must inform this decision are facts in the warrant demonstrating the informant's reliability, veracity, and basis of knowledge. *Id*. The Supreme Court in *Gates* refused to lay down a rigid rule for how much detail a warrant application must provide about the informant, observing that a deficiency in one factor may be balanced out by the excess in another. *Id*. at 233-34. Indeed, even anonymous tips, when supplemented by independent police investigation, may be sufficient despite the absence of any indication of the anonymous informant's veracity, reliability, or basis of knowledge. *Id.* at 237-38. Because this inquiry is based on the information that was made available to the issuing magistrate, the Court confines its inquiry on this issue to the allegations that appear on the face of the Inspector Horton's affidavit.

The Defendants argue that much of the information in Inspector Horton's warrant application was provided by NICB investigators, and that such information was "uncorroborated," "selective," and "stale." They contend – without any supporting statement of facts – that the magistrate issuing the warrant "would have concluded that the information came from law enforcement," and "likely assumed that the traditional indicia of reliability afforded to law enforcement statements were present," even though the NICB and its sponsoring insurance companies had an interest in this matter and a motive to fabricate or conceal evidence.

To assess what indicia of Inspector Horton's informants were made available to the issuing magistrate, the Court turns to the language of the warrant application itself.

• In paragraph 3, Inspector Horton states that "I have participated in the investigation of the offense described below . . . and read reports from other investigators, namely from the

National Insurance Crime Bureau (NICB) concerning the progress of this investigation. As a result, I am familiar with many aspects of the investigation, although I did not personally participate in every aspect."

• In paragraph 14, Inspector Horton states that "In August 2005, National Insurance Crime Bureau (NICB) agents and I conducted telephonic interviews of former DRI employee Kate Casserleigh," and goes on to recite information supplied by Ms. Casserleigh.

• In paragraph 15, Inspector Horton states that "On August 19, 2005, NICB agents interviewed former DRI project manager Greg Rye," and goes on to recite information obtained in that interview.

• Paragraph 17 similarly recites that "NICB agents" interviewed former DRI Estimator Mark Troudt and summarizes information from that interview.

• Paragraph 18 recites information gleaned from an interview by both Inspector Horton and an NICB agent of former DRI project manager Scott Risdon.

• Paragraph 19 recites information gleaned from an interview by "NICB agents" of David Ohl, and Paragraph 20 discusses an NICB interview of Richard Capra.

• Paragraph 21 discusses Inspector Horton's own followup interview with Mr. Capra, in which he repeated or corroborated some items of information that he had conveyed to the NICB agent.

• Paragraphs 22 and 23 recite information obtained by NICB agents conducting interviews of certain witnesses.

• Paragraphs 24-27 recites information from joint interviews conducted by Inspector Horton and an NICB agent of four more witnesses.

From this, the Court concludes that the affidavit supplied the issuing magistrate with sufficient information to assess the veracity of the NICB investigators' veracity. The affidavit makes clear which witness interviews were conducted exclusively by NICB investigators, and which interviews in which Inspector Horton personally participated. Questions of an unidentified informant's veracity arise only with regard to those interviews that were conducted solely by an NICB investigator – i.e. those in which Inspector Horton was not personally involved – and witness interviews of which Inspector Horton had no personal knowledge

9

account for fewer than half of those recited in the affidavit. Morever, much of the crucial information obtained in interviews conducted solely by NICB investigators is corroborated by statements from witnesses whom Inspector Horton participated in interviewing. Under these circumstances – where the warrant affiant was personally involved in an investigation that corroborated much of the information supplied by an informant, and where the identities of the information were known to the affiant – the Court finds no reason to question the issuing magistrate's conclusion that the unknown informant's information, coupled with that personally observed by the affiant, was sufficient to establish probable cause. *See e.g. U.S. v. Castro-Rivas*, 254 Fed.Appx. 742, 748-50 (10th Cir. 2007) (affiant's knowledge of informant's identity, such that informant could be "held responsible" for fabrications, weighs in favor of reliability).

Although it is not strictly necessary in order to rule on this portion of the Motion, the Court briefly addresses the Defendants' contention that Inspector Horton's affidavit misled the issuing magistrate into believing that NICB was actually a law-enforcement agency. First, the Court notes that this assumption is entirely speculative – the Defendants offer nothing to suggest that the magistrate actually harbored any particular belief about the status of NICB. Second, the Court notes that although Inspector Horton may not have done anything in the affidavit to dissuade the issuing magistrate from believing that NICB might have some law-enforcement power, neither did she encourage such an opinion; to the contrary, she simply referred to the organization by its name. If the magistrate had any doubts or concerns about the identity of a group he or she was otherwise unfamiliar with, he or she could have consulted further with

Inspector Horton, attempted to gather additional information about the organization,[1] or simply elected to discount or disregard the allegations attributable solely to that organization.  have obtained more information.  Finally, the Court has no doubt that, even if Inspector Horton had expressly advised the magistrate that the NICB was affiliated with the insurance industry, such information would not have altered the decision to issue the warrant.  In essence, the NICB (and the insurance companies who sponsor it) are akin to victims of the crimes charged here, and relying on information supplied by a victim in seeking a search warrant – even where the victim has a motive to misrepresent or outright fabricate that information – is a common practice.  *See e.g. U.S. v. Zarif*, 192 Fed.Appx. 784, 790 (10th Cir. 2006) (unpublished) (warrant application predicated primarily on information supplied by victims sufficiently demonstrated probable cause; "the possibility that the statements corroborated each other because the minors may have jointly fabricated their stories was another circumstance for the magistrate judge to consider").  Given the extent to which Inspector Horton's own investigation corroborated much of the information obtained by NICB investigators' own interviews, the Court is confident that a magistrate fully apprised of the NICB's affiliation would nevertheless have issued the warrant.  *See U.S. v. Avery*, 295 F.3d 1158, 1168-69 (10th Cir. 2002) (where some of informant's information was corroborated by law enforcement officials, "a more detailed discussion of [adverse information about the informant] would [not] have affected the magistrate judge's probable cause finding").

---

[1] Of its own accord, this Court conducted an internet search for the term "NICB."  That search yielded the organization's web page at www.nicb.org.  A link on that main page entitled "Who We Are" leads to a page that explains that "The National Insurance Crime Bureau is a not-for-profit organization that receives support from approximately 1,000 property/casualty insurance companies."

Accordingly, to the extent the Defendants seek suppression of evidence on the grounds that the warrant was issued without an adequate showing of probable cause, the Motion is denied.

### D. Overbreadth of the warrant and/or its execution

Next, the Defendants contend that the warrant itself was overbroad, authorizing the seizure of computers and peripherals even though the warrant affidavit itself made no particular reference to the likelihood that evidence of a crime could be found on DRI's computers. This argument is intermingled with what appears to be a separate argument that, in executing the warrant, the Government exceeded its terms, seizing information located on 4 computer servers when the warrant made reference to only one server and searching 28 personal computers when the affidavit anticipated a search of 15 computers.

The first argument – that the warrant's authorization to seize "All electronic data processing and storage devices, computers and computer systems, [etc.] associated with the creation, storage, input and use of the types of records and information" described elsewhere in the warrant exceeded the factual showing in Inspector Horton's affidavit – is factually without merit. The affidavit alleges: (i) that subcontractors submitted estimates to DRI by e-mail, among other methods (¶ 9); (ii) that DRI maintained a "computerized record system" that included, among other things, purchase orders for materials to be used on various projects (¶ 14A, 14 D); and (iii) that estimators used a computer program called Xactomate to prepare job estimates and search a database of customers, companies, and job costs (¶ 14 C, 17 C4). Given that the evidence of the crimes alleged would consist primarily of original and inflated estimates e-mailed by contractors, along with evidence of the actual costs incurred by DRI in performing

repairs (to be compared against what they actually claimed to insurance companies) maintained in the "computerized record system," the Court cannot find that a warrant permitting search and seizure of computers transcended the showing made by Inspector Horton's affidavit.

Turning to the argument that the warrant was overbroad in permitting the Government to search and seize more items than the warrant anticipated, the Court observes that the Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings. *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir.1999). The Court examines the description of the items to be seized practically and considers the warrant's language in a common sense fashion. *See Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir.1997). A warrant is sufficiently particular "when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir.1982). Broad and generic terms may be sufficient if "the description is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988).

In *United States v. Welch*, 291 Fed.Appx. 193, 203-04 (10th Cir. 2008) (unpublished), the Court found that the seizure of several computers and related peripherals pursuant to a warrant that generally authorized the seizure of "computers" was not overbroad:

> A reasonable interpretation of the warrant's language confined the computers (and files within them) to be seized and searched to those connected with the manufacture of ecstasy and methamphetamine. . . Under the circumstances of the case, the DEA had no information which could have provided further clarity. It had no idea what kinds of computer equipment it might find. As it turned out, Welch had a significant number of computers and other computer equipment throughout his house in both business and personal spaces. Without knowing ahead of time which pieces of equipment Welch used in conducting his drug

> business, the DEA could not specifically identify the computers to
> be seized . . .The DEA was thus limited by the information it had
> to describing the computers suspected to be connected to Welch's
> criminal activity.

The court in *Welch* went on to note that it "has never required warrants to contain a particularized computer search strategy. We have simply held that officers must describe with particularity the *objects* of their search." *Id.* at 204-05, *citing U.S. v. Brooks* 427 F.3d 1246, 1251 (10th Cir. 2005). In *Brooks,* the case *Welch* relies upon, the 10th Circuit instructed trial courts adjudicating a claim of overbreadth to consider "the object of the search, the types of files that may reasonable contain those objects, and whether officers expanded the scope of the search upon locating evidence of a different crime." 427 F.3d at 1252.

Here, the warrant authorized the search and seizure of "all . . . computers" at DRI. Given that the evidence to be seized consisted of documents and files that were used in the ordinary course of DRI's business, a search/seizure of all of the computers in use at that place of business fell within the practical and common-sense terms of the warrant. The Defendants complain that they kept some personal files on their work computers, but do not assert that the Government searched, for example, computers that were clearly personal property belonging to employees and not connected to DRI's network, nor do the Defendants contend that, beyond ascertaining that clearly personal files were kept on company computers, the Government searched those clearly personal files. Given the fact that computers were used extensively in DRI's business operations, and the evidence to be obtained was at the heart of those business operations, the Court finds that neither the terms of the warrant relating to the seizure of computers, nor the nature of its execution, as described in the Defendants' motion, demonstrates any violation of the Fourth Amendment. To the extent the Motion seeks relief in this respect, it is denied.

### E. Request for return of unused property

Finally, the Defendants make a generalized argument that the Government has needlessly retained a variety of business records that are not germane to this case. The Defendants contend that the Government has had more than two years to sort through the evidence it seized, and yet it still possesses some 114 boxes of documents that have neither been identified as relevant evidence nor returned to DRI. The Defendants request that the Court order the Government to return seized material that is not claimed to be evidence, as well as any personal materials that the Government may have seized during the search, such as personal e-mail folders.

The Court declines to formally address this aspect of the motion at this time. It encourages the parties to confer and address precisely what materials remain in the Government's possession, to consider the extent to which the Government is entitled to retain and/or has a practical use for the property in question, and to attempt in good faith to identify and return that information that is not necessary for the prosecution of this case. However, because this is an issue that does not strictly impact the admissibility of evidence at trial nor otherwise bear on issues of suppression, the Court will not take evidence on this issue at the May 28, 2009 hearing.

For the foregoing reasons, the Defendants' and DRI's Motion **(# 148)** is **DENIED IN PART**, insofar as the Court finds no grounds for conducting a hearing or suppressing evidence on the grounds of *Franks*, sufficiency of a showing of probable cause, overbreadth, or the Government's retention of unneeded property. The Court **DEFERS RULING** on the remaining request in the motion for suppression based on the NICB representatives' participation in the execution of the warrant pending receipt of evidence at the hearing scheduled for May 28, 2009.

Furthermore, in light of the circumscribed issues to be determined at such hearing, it will be concluded by noon on May 28, 2009.

Dated this 22d day of May, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge